BUSHMAN, Respondent, vs. TOMEK and others, Defendants: FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant, and four other cases.

*September 16—October 13, 1936.*

564

For the appellant there was a brief by *Sanborn, Blake & Aberg* and *Ernest H. Pett,* all of Madison, attorneys, and *E. L. McIntyre* of Milwaukee of counsel, and oral argument by *Mr. Pett, Mr. W. J. P. Aberg,* and *Mr. McIntyre.*

*Vilas H. Whaley* of Racine, for the respondents Bushman.

For the respondents John F. Dempsey, Jane Scoggin, and Thomas F. Scoggin, there was a brief by *Beck, Smith & Heft* of Racine, and oral argument by *Thorwald M. Beck* and *Carroll R. Heft.*

ROSENBERRY, C. J.   In this court the appellant, Farmers Mutual, contends that there was no proof to sustain a finding of negligence on the part of Reynolds, the driver of the Noble car; that a new trial should be granted because the verdict is fatally defective and because of errors in instructions to the jury.   We shall not attempt to set out all of the facts in this most unfortunate accident, which resulted in the death of one person and the serious injury of several others.

On the question of Reynolds' negligence and the question raised in connection therewith, we have carefully examined the record and we find no reversible error.   The trial was a long, and, of necessity, a very complicated one due to the conflicting interests of the various parties.   The verdict as submitted to the jury was agreed to by all parties without objection.   The errors assigned with respect to the instructions require no special treatment.   Were no other issue raised, the judgment would be affirmed without opinion.

Upon this appeal the Farmers Mutual urged that the policy of insurance in question was void because the ownership of the automobile was not as reported to the appellant's agent, the title to the automobile being in fact in the name of Mrs. Noble personally, and it being covered by a conditional sales contract.   The appellant seeks to raise this question for the first time in this court.   The question of coverage was settled

as a special issue at the trial. Upon the trial of that issue no contention was made that the policy of insurance was void. No issue was made by the pleadings in regard to the validity of the contract of insurance. The answer of the Farmers Mutual admitted the issuance of the policy of insurance to the Lawrence Noble estate and alleged that Reynolds drove the car without the consent or permission of any adult member of the household of the Lawrence Noble estate, or without the consent or permission of any adult member of the household of Laura Noble, widow of Lawrence Noble. This question cannot be raised in this court at this time. No one knows what the evidence would have been if the defense had been set up in the answer and the matter fully litigated.

The most serious question raised in the case is whether or not John Reynolds was operating the Noble automobile with the permission of the insured within the meaning of sec. 204.30 (3), Stats., which provides:

"No such policy shall be issued or delivered in this state to the owner of a motor vehicle, unless it contains a provision reading substantially as follows: The indemnity provided by this policy is extended to apply, in the same manner and under the same provisions as it is applicable to the named assured, to any person or persons while riding in or operating any automobile described in this policy when such automobile is being used for purposes and in the manner described in said policy. . . . The insurance hereby afforded shall not apply unless the riding, use or operation above referred to be with the permission of the assured named in this policy, or if such assured is an individual, with the permission of an adult member of such assured's household other than a chauffeur or domestic servant. . . ."

The facts with reference to granting permission to John Reynolds driving the Noble automobile are practically undisputed. Lawrence Noble, a farmer, had some time in 1933 been the owner of a Buick automobile, and was insured against public liability in the Farmers Mutual. At the time of his decease this Buick automobile became the property of

his estate. His wife, Laura Noble, was named executrix of his estate, and by the terms of his will had a life interest in all of his property with power to dispose of any part thereof. In the spring of 1934, Laura Noble traded the Buick automobile for a Chevrolet automobile, which was the car involved in this accident and which was driven by John Reynolds. Title to the Chevrolet was taken by Laura Noble personally. She made application for a state license in her own name and executed a conditional sales contract for the unpaid balance of the purchase price. After the exchange one Harvey Spriggs, an agent of the Farmers Mutual Automobile Insurance Company, was informed by Earl Noble that a new automobile had been purchased, gave Spriggs the necessary information as to engine and serial numbers, and Spriggs thereafter notified his home office. Indorsement was made and affixed to the policy. This indorsement was made in the name of the Lawrence Noble estate. The use of the automobile as stated in the indorsement was for pleasure and business calls. Earl Noble was the son of Laura Noble and Lawrence Noble. He was a young man about nineteen years of age at the time of the accident, and was engaged in operating the farm belonging to the Lawrence Noble estate. He and Reynolds were friends, and to the knowledge of Laura Noble the two boys had exchanged places as driver of the car. The Reynolds were neighbors of the Nobles. Mrs. Noble had seen Reynolds drive the car twice, and on two occasions had given express permission to Reynolds to drive from Burlington to Racine on business for his father. On one of these occasions Earl went with Reynolds. On the night of the accident, Mrs. Noble had been using the automobile and returned home earlier because she knew that Earl and Reynolds wished to use the car that night. As Earl and Reynolds drove away Mrs. Noble cautioned them according to her statement that it was the Fourth of July, "Be careful;" according to Earl's recollection: "Boys be careful. It is a holi-

day;" according to Reynolds: "Boys be careful. There is a lot of traffic on the road tonight."

The Farmers Mutual contends that these facts are not sufficient to support a finding by the jury that the car in question was being driven with the permission of Laura Noble. To sustain its position the appellant seeks to distinguish *Christiansen v. Ætna Casualty & Surety Co.* (1931), 204 Wis. 323, 236 N. W. 109, from the case at bar. It is considered that that case was a much stronger case for the owner than is the case at bar. The effect of the holding in the *Christiansen Case* is that the permission referred to in the statute need not be express, but may be implied, even in a case where the owner protests but the automobile is nevertheless used with his knowledge. Taken in connection with the previous facts and circumstances within the knowledge of Mrs. Noble, her return on the night in question so that the boys might use the car, her admonition to the boys to be careful, "there is a lot of traffic on the road tonight," certainly warrant the inference that the car was driven by Reynolds with her permission. The finding of the jury is amply supported by the evidence in the case, and the trial court correctly so held.

*By the Court.*—The judgment in each case is affirmed.